Wright, J.,
delivered the opinion of the Court.
The decree of the Chancellor in this cause should be affirmed. As to the three shares in the Daniel Jones, Sr., tract of land, purchased by complainant of the defendant, there is no controversy. That was an absolute purchase, and is so admitted in the bill and answer, and so shown to be in the proof. The decree as to that, is conceded to be proper. The contest here, is as to forty-two acres of the purchase made by Daniel Jones, at the clerk and master’s sale, in the' year 1852. As to that, complainant insists he was a joint purchaser with de *106 fendant at the master’s sale, and was to have that much of the whole purchase out of a particular portion of the tract. The defendant, in his answer, denies this, and claims that he made the purchase in his own name and for himself; that complainant was desirous of purchasing of the heirs of Reps Davis, a tract of land in the lower end of “Beech Bottom,” adjoining the lands he already owned, to make his farm complete; but that it was probable he would not be able to effect this purchase for some time, and in the meantime, he would not have land enough to employ his force upon in the bottom; that the defendant could very well do without the use of a part of the land he had purchased at the master’s sale for a time, and would have to borrow a part of the money to pay for it; and that, therefore, it was agreed between them, that complainant should advance for defendant, the money to pay the clerk and master for the forty-two acres of land at $14.60 per acre; and should have the use of the land for the interest of the money, and when defendant was able to refund it to complainant, he was to do so, and have his land back; and that this arrangement was for the accommodation of both parties. This view of the case is sustained by Thomas M. Jones, a brother of the complainant and defendant, in his deposition, and by other evidence in the record. Thomas M. Jones, on the 1st day of January, 1853, drew up the writing between them, in which no distinction is made between the three shares in the Daniel Jones, Sr., tract of land, and the forty-two acres. The writing, as to both interests is, in its terms, an absolute sale, and the right to redeem, or have back the forty-two acres by the defendant, is no where men *107 tioned in it. But Thomas M. Jones, the draftsman, proves that he intended- to make the distinction, and supposed he had; that he wrote it under directions from complainant, and when defendant come to hear it read, he objected to executing it, because the true contract between him and complainant was not stated in it, it not showing at what time he was to have the forty-two acres back, or that he was to be allowed to redeem it. To this Thomas M. Jones replied, that it was not very well drawn, but that the contract between them was well understood, that they were brothers, and would do right, and there could be no difficulty between them; and then Daniel Jones signed the contract. It is true, that the clerk and master proves, that though the sale was made to Daniel Jones alone, yet he regarded complainant as being jointly interested with him in the purchase; that it is proved, and the answer so admits, that complainant advanced the money to the master to pay for the forty-two acres, that complainant has possessed and cultivated it ever since, that he had its lines run and marked, and defendant disputed with him as to the lines, and got back of him a small piece of the land for a barn site, and frequently, in a general way, said complainant was to have a part of the land. Yet all this is not inconsistent with the position taken by defendant in his answer, for complainant was to have the land for an indefinite time, and was to possess and cultivate it, until the defendant was able to redeem it. And the brothers might very well- examine the land together, prior to the master’s sale, with a view to carry out the arrangement proved by Thomas M. Jones. Jane Nolin, a sister of the parties, sustains the evidence *108 of Thomas M. Jones. And it is very clear, when we examine the entire record, that the defendant did not understand himself as haying parted absolutely with this land. And though many of his acts and declarations, when taken alone, would seem to show that he had; yet these must be controlled by the evidence of Thomas M. Jones, the witness who drew the contract between the parties; and who,' alone, seems to know how the disputed facts between these two brothers really are. The weight of the evidence is, we think, with the defend-, ant. And the law is well settled, that though a conveyance be absolute in its terms, it may be shown, by parol proof, to be a mortgage. And we can perceive no valid reason, why the same thing may not be done in the case of a title bond, or other executory contract. The Chancellor held the instrument a mortgage, and we affirm his decree.